## FLSA SETTLEMENT AGREEMENT AND RELEASE

This FLSA Settlement Agreement and Release ("Agreement") is entered into as of May 7, 2019 by and between Mr. William Engledow ("Plaintiff") and Houston Lake Funeral Home, LLC, d/b/a McCullough Funeral Home and Magnolia Cemetery, LLC d/b/a Magnolia Park Cemetery ("Defendants"). Together, Plaintiff and Defendants are referred to as the "Parties."

## RECITALS

WHEREAS, during his tenure, Plaintiff occupied office space at the Defendants' facilities and primarily performed work as a Family Service Counselor selling pre-need burial insurance;

WHEREAS, on or about April 27, 2018, Plaintiff filed a lawsuit captioned *William Engledow v. Houston Lake Funeral Home, LLC, d/b/a McCullough Funeral Home and Magnolia Cemetery, LLC d/b/a Magnolia Park Cemetery*, Civil Action File No. 5:18-CV-00146-TES in the U.S. District Court for the Middle District of Georgia, Macon Division against the Defendants (the "Litigation");

WHEREAS, Defendants deny Plaintiff's allegations and deny any liability for the claims asserted;

WHEREAS, the Parties mediated this matter on May 7, 2019 before Mediator Daniel Klein;

WHEREAS, the Parties desire to avoid further litigation and to fully and expeditiously settle any and all claims existing between the Parties; and

WHEREAS, the Parties have reached an agreement pursuant to which all claims arising in the Litigation and from the work Plaintiff performed with the Defendants are fully resolved;

NOW THEREFORE, the Parties, intending to be legally bound, and in consideration of the mutual recitals, covenants and other good and valuable consideration recited herein, the receipt and legal sufficiency of which each party hereby acknowledges, agree as follows:

1.  **Recitals.** The recitals stated above are hereby incorporated and made a part of this Agreement.

2.  **Settlement Payment.** In consideration for signing this Agreement and the fulfillment of the promises contained herein, the Defendants shall pay Plaintiff and his counsel a total sum of Forty Thousand Dollars ($40,000) as outlined in this Agreement (the "Settlement Payment"). The Defendants shall pay the entire amount described above as set forth below:

(a) (1) One check made payable to Plaintiff in the amount of eight-thousand seven hundred fifty dollars ($8,750.00) representing Plaintiff's claim for unpaid wages, less any applicable payroll deductions and withholding, and for which Defendants will issue an IRS Form W2; and (2) one check made payable to Plaintiff amount of eight thousand seven hundred fifty dollars ($8,750.00) representing Plaintiff's claim for liquidated damages, without deduction, and for which Defendants will issue Plaintiff an IRS Form 1099 designating such payment in Box 3 "other income"..

(b) One check made payable Plaintiff's counsel at "Charles R. Bridgers, Attorney, LLC, in the amount of Twenty-Two Thousand Five Hundred ($22,500). The Defendants will issue an IRS Form 1099 for this amount to Plaintiff's counsel.

(c) The Defendants' counsel must receive all of the following from Plaintiff: (i) this Agreement executed by Plaintiff and (ii) the requisite tax identification numbers and other information, including executed W-9 forms.

(d) Payment is due by Defendants within ten (10) days after its counsel has received all of the items specified in Section 2(c) and all required court approvals related to the resolution of this matter have been duly granted.

(e) The Defendants will pay all costs of the mediation conducted on May 7, 2019 by and directly to Mediator Daniel Klein.

(f) The Parties acknowledge and agree that they are solely responsible for paying any attorneys' fees and costs they have incurred or continue to incur, and that neither Party nor its attorney(s) will seek any award of attorneys' fees, costs, or other monies from the other Party, except as otherwise provided in this Agreement.

3. **Taxes**. Plaintiff shall be solely responsible for, and is legally bound to make payment of, any taxes determined to be due and owing (including penalties and interest related thereto) by him to any federal, state, local or regional taxing authority as a result of this Agreement. Plaintiff agrees to indemnify and hold the Defendants harmless with respect to any taxes, interest, or penalties assessed against the Defendants as a result of the Settlement Payments due and owing by Plaintiff. The Defendants does not make any warranty or representation to Plaintiff or his counsel regarding the tax consequences of the monetary and non-monetary relief provided to Plaintiff under this Agreement—including, but not limited to, the treatment of certain monies as non-wage damages.

4. **Dismissal of Litigation**. Plaintiff and his counsel agree to dismiss, with prejudice, all pending claims they have brought against the Defendants with the Court retaining jurisdiction to enforce the Agreement, including the Litigation, pursuant to the applicable procedural rules. More specifically, within three (3) business days of receipt of the Settlement Payment, Plaintiff's counsel will prepare and send to Defendants' counsel for review the document(s) required to execute a dismissal with prejudice of the Litigation. No later than five (5) business days of receipt of the Settlement Payment, Plaintiff's counsel will file the same with the appropriate court.

5. **General Release of Claims By The Parties.** Plaintiff, on behalf of himself, his heirs, executors, administrators, and assigns, knowingly and voluntarily waives and releases the Defendants and its parent corporation, their affiliates, subsidiaries, divisions, insurers, predecessors, both individually and in their business capacities, and their employee benefits plans and programs and their administrators and fiduciaries (collectively, the "Released Parties"), from any and all claims, known and unknown, that Plaintiff has or may have against the Released Parties as of the date of execution of the Agreement. This release is comprehensive and includes any claim that Plaintiff could assert against the Released Parties based upon acts or omissions that occurred, or that could be alleged to have occurred, before Plaintiff executes this Agreement. This release is intended to be as comprehensive as can be conceived and the law will allow, and includes but is not limited to claims based on: negligent or intentional tortious conduct; express or implied contract; covenants of fair dealing and good faith; wrongful discharge; the Age Discrimination in Employment Act of 1967 ("ADEA"); the Older Worker Benefit Protection Act; the Family and Medical Leave Act; Title VII of the Civil Rights Act of 1964; the Civil Rights Acts of 1991; Section 1981 through 1988 of Title 42 of the United States Code; the Equal Pay Act; the Employee Retirement Income Security Act of 1974; the Americans with Disabilities Act of 1990; the Worker Adjustment Retraining and Notification Act; the Fair Credit Reporting Act; any other federal or state common law or federal, state or local laws, ordinances, or regulations; any other public policy, contract, tort or common law theory; or any statutory or common law principle allowing for the recovery of fees or other expenses, including claims to attorneys' fees.

If any claim is not subject to release, to the extent permitted by law, Plaintiff waives any right or ability to be a class or collective action representative or to otherwise participate in any putative or certified class, collective or multi-party action or proceeding based on such a claim in which the Defendants or any other of the Released Parties is a party.

In addition, the Defendants on behalf of its parent corporations, affiliates, subsidiaries, divisions, insurers, predecessors, successors, assigns, and current and former employees, knowingly and voluntarily waives and releases Plaintiff from any and all claims, known and unknown, that the Defendants has or may have against Plaintiff as of the date of execution of this Agreement. This release is comprehensive and includes any claim that the Defendants would assert against Plaintiff based on acts or omissions that occurred, or that could be alleged to have occurred, before Plaintiff executes this Agreement. This release is intended to be as comprehensive as can be conceived and the law will allow, and includes but is not limited to claims based upon contract, tort or common law theory, or any statutory or common law principle allowing for the recovery of fees or other expenses, including claims to attorneys' fees.

6. **FLSA Release.** Plaintiff individually and on behalf of his spouse, heirs, successors, assigns, representatives and attorneys, completely releases and forever discharges the Defendants, as well as any of their past or present successors, assigns, heirs, estates, executors, administrators, agents, representatives, predecessors, parents, subsidiaries, affiliates, subcontractors, contractors, contracting parties, officers, directors, trustees, board members, managers, joint ventures, shareholders, partners, employees, employees, independent contractors, attorneys, ERISA plan administrators, insurers, other related parties, and all other persons acting by, through, under or in concert with them (collectively referred to as the "Released Parties") from any and all claims,

rights, demands, actions, obligations, and causes of action of any and every kind, nature, and character, whether known or unknown, which Plaintiff may now have, or has ever had, against any and all of the Released Parties arising from or in any way connected with his claims for unpaid wages, penalties, commissions, bonuses or other compensation; claims for FLSA retaliation; and claims in the Litigation arising from or related to the Fair Labor Standards Act. Plaintiff acknowledges that, as of the date of the execution of this Agreement and receipt of the Settlement Payment, Plaintiff will have been paid all wages undisputedly due and owing in connection with his employment with the Defendants.

7.      **No Outstanding or Known Future Claims/Causes of Action**.  Plaintiff affirms that he has not filed with any governmental agency or court any type of action, report, or complaint against the Released Parties (other than the Litigation), and currently knows of no existing act or omission by the Released Parties that may constitute a claim or liability excluded from the release above.

8.      **No Admission of Liability**.  The Parties acknowledge that the Settlement Payment was agreed upon as a compromise and final settlement of disputed claims and that payment of the Settlement Payment is not, and may not be construed as, an admission of liability by Defendants and is not to be construed as an admission that Defendants engaged in any wrongful, tortious, or unlawful activity.  Defendants specifically disclaims and denies any liability to Plaintiff or that it engaged in any wrongful, tortious, or unlawful activity.

9.      **Non-Disparagement**.  The Parties agree that, unless required to do so by legal process, Plaintiff and Defendants' officers and directors will not make any disparaging statements or representations, either directly or indirectly, whether orally or in writing, by word or gesture, to any person whatsoever, about the other Party or any of the other Party's directors, officers, employees, agents, or representatives.

For purposes of this Paragraph, a disparaging statement or representation is any communication which, if publicized to another, would cause or tend to cause the recipient of the communication to question the business condition, integrity, competence, good character or product quality of the person or entity about whom the communication relates.

10.     **Neutral Reference**.  Upon a written request from a prospective employer, Defendants will provide a neutral reference concerning Plaintiff, indicating the dates Plaintiff performed work, job title, and salary history with Defendants.  Plaintiff agrees to direct any requests for a reference to Defendants' Owner, Mr. Michael McNeal ("Mr. McNeal"), who will provide a neutral reference to all inquiring persons, consisting only of confirmation of his dates of employment and last position held.

11.     **No Future Employment Relationship between the Parties**.  Plaintiff agrees to never knowingly seek or accept rehire or employment, either directly, through a temporary agency, or by any other method, with Defendants or its current or future affiliated companies (collectively, "Defendants' Companies").  Plaintiff agrees that Defendants' Companies shall have no obligation to engage his services in any capacity (e.g., as an employee, contractor, temporary employee, or

4

consultant) in the future and that any application or request for employment or work may be denied solely based on Plaintiff's breach of this provision of the Agreement.

**12.     Medicare/Medicaid Payments.**  Plaintiff represents and warrants that no Medicaid payments have been made to or on behalf of Plaintiff and that no liens, claims, demands, subrogated interests, or causes of action of any nature or character exist or have been asserted arising from or related to any Released Claims.  Plaintiff further agrees that Plaintiff, and not the Released Parties, shall be responsible for satisfying all such liens, claims, demands, subrogated interests, or causes of action that may exist or have been asserted or that may in the future exist or be asserted.  Plaintiff agrees to indemnify and hold harmless the Released Parties from any and all claims, demands, liens, subrogated interests, and causes of action of any nature or character that have been or may in the future be asserted by Medicare and/or persons or entities acting on behalf of Medicare, or any other person or entity, arising from or related to this Agreement, the payment of the Settlement Payment, any conditional payments made by Medicare, or any medical expenses or payments arising from or related to any released claim that is subject to this Agreement or the release set forth herein, including but not limited to: (a) all claims and demands for reimbursement of conditional payments or for damages or double damages based upon any failure to reimburse Medicare for conditional payments; (b) all claims and demands for penalties based upon any failure to report, late reporting, or other noncompliance with or violation of Section 111 of MMSEA that is based in whole or in part upon late, inaccurate, or inadequate information provided to the Released Parties by Plaintiff or Plaintiff's Counsel or upon any failure of Plaintiff or Plaintiff's Counsel to provide information; and (c) all Medicaid liens.  This indemnification obligation includes all damages, double damages, fines, penalties, attorneys' fees, costs, interest, expenses, and judgments incurred by or on behalf of the Released Parties in connection with such claims, demands, subrogated interests, or causes of action.

**13.     Agreement is Legally Binding.**  The Parties intend this Agreement to be legally binding upon and shall inure to the benefit of each of them and their respective successors, assigns, executors, administrators, heirs and estates.  Moreover, the persons and entities referred to in release above, but not a Party, are third-party beneficiaries of this Agreement.

**14.     Entire Agreement.**  This Agreement constitutes the entire agreement and understanding of the Parties and supersedes all prior negotiations and/or agreements, proposed or otherwise, written or oral, concerning the settlement of Plaintiff's FLSA claims.  Furthermore, no modification of this Agreement shall be binding unless in writing and signed by each of the parties hereto.

**15.     New or Different Facts: No Effect.**  Except as provided herein, this Agreement shall be, and remain, in effect despite any alleged breach of this Agreement or the discovery or existence of any new or additional fact, or any fact different from that which any Party now knows or believes to be true.  Notwithstanding the foregoing, nothing in this Agreement shall be construed as, or constitute, a release of any Party's rights to enforce the terms of this Agreement.

16. **Interpretation**.  Should any provision of this Agreement be declared or be determined by any court to be illegal or invalid, the validity of the remaining parts, terms or provisions shall not be affected thereby and said illegal or invalid part, term or provision shall be deemed not to be a part of this Agreement.  The headings within this Agreement are purely for convenience and are not to be used as an aid in interpretation.

17. **Governing Law and Choice of Forum**.  This Agreement is made and entered into within and shall be governed by, construed, interpreted and enforced in accordance with the laws of the State of Georgia, without regard to the principles of conflicts of laws.

18. **Reliance on Own Counsel**.  In entering into this Agreement, the Parties acknowledge that they have relied upon the legal advice of their respective attorneys, who are the attorneys of their own choosing, that such terms are fully understood and voluntarily accepted by them, and that, other than the consideration set forth herein, no promises or representations of any kind have been made to them by another Party.  The Parties represent and acknowledge that in executing this Agreement they did not rely, and have not relied, upon any representation or statement, whether oral or written, made by another Party or by that other Party's agents, representatives or attorneys with regard to the subject matter, basis or effect of this Agreement or otherwise.  The Parties further represent that they freely and voluntarily entered into this settlement on their own behalf, in the exercise of their own free act, deed and will, relying on their own judgment, free of any duress or coercion, and that they realize that this Agreement is final and conclusive and that it is their clear intent that the Settlement Payment as described above, is for the sole and exclusive purpose of settling seriously disputed and vigorously contested claims, buying peace, and avoiding further and substantial expense of litigation.

19. **Counterparts**.  This Agreement may be executed by the Parties in counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.

20. **Drafting**.  The Parties agree that they jointly have agreed to the terms and language used herein and that no ambiguity will be construed against any party for having "drafted" this Agreement.

21. **No Assignment**.  The Parties expressly represent and warrant that they have not assigned, pledged, or otherwise sold or transferred, either by written instrument or otherwise, any right, title, interest, or claims they have or may have in connection with or arising out of the settled claims that are the subject of this Agreement.

22. **Authority to Execute Agreement**.  Each Party warrants and represents that the person signing this Agreement on its behalf has authority to bind that Party and that the Party's execution of this Agreement is not in violation of any by-law, covenants, and/or other restrictions placed upon them by their respective entities, if any.  The Parties do, by the signatures of their respective attorneys, below, acknowledge that they have authorized their respective attorneys to bind them to this Agreement and that they are bound by this Agreement as if they had signed this Agreement themselves.

23. **Violation of Agreement.** The Parties agree that in the event any Party violates this Agreement the prevailing party in any litigation which shall arise from said violation shall be entitled to all damages incurred, including reasonable attorneys' fees and expenses.

24. **Further Assurances.** Upon execution of this Agreement, each Party shall execute such other and further instruments and take such other action as reasonably may be required to effectuate the terms and spirit of this Agreement.

25. **Facsimile/Electronic Signatures.** Execution delivered by facsimile or electronic mail shall be deemed effective as if executed in original.

IN WITNESS WHEREOF, the undersigned, intending to be legally bound, have executed this Agreement, effective upon the later of the date when this Agreement becomes executed by all the undersigned and the date when all conditions precedent set forth herein are met.

DATED: May 24, 2019

WILLIAM ENGLEDOW

_William Engledow_
(print name)

DATED: May 30, 2019

HOUSTON LAKE FUNERAL HOME, LLC d/b/a MCCULLOUGH FUNERAL HOME AND MAGNOLIA CEMETERY, LLC d/b/a MAGNOLIA PARK CEMETERY

Signed: _Michael McNeal_

By: Michael McNeal

Its: Owner

7