# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF GEORGIA
## MACON DIVISION

| | |
|---|---|
| **WILLIAM ENGLEDOW,**<br><br>   *Plaintiff,*<br><br>**v.**<br><br>**HOUSTON LAKE FUNERAL HOME, LLC, d/b/a MCCULLOUGH FUNERAL HOME and MAGNOLIA CEMETERY, LLC, d/b/a MAGNOLIA PARK CEMETERY,**<br><br>   *Defendants.* | **CIVIL ACTION NO. 5:18-cv-00146-TES** |

## AMENDED[1] ORDER DENYING WITHOUT PREJUDICE
## CONSENT MOTION FOR APPROVAL OF SETTLEMENT AGREEMENT

Plaintiff William Engledow alleges in his Complaint that Defendants Houston Lake Funeral Home, LLC, d/b/a McCullough Funeral Home and Magnolia Cemetery, LLC, d/b/a Magnolia Park Cemetery (collectively "Defendants") violated the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*, by failing to pay his "overtime premium when he worked more than forty hours each week" and his "earned commissions when he was terminated." [Doc. 1 at p. 2]. Plaintiff's Complaint also raised the following non-federal claims; breach of contract, quantum meruit, and promissory estoppel. [*Id.* at pp. 23–26].

---

[1] This Amended Order is filed only to correct a typo in the title of the Court's previous Order [Doc. 25].

After the Court granted the parties' Joint Motion to Stay Proceedings [Doc. 19], the

parties conducted a settlement conference and, after "extensive negotiations," reached a

settlement to resolve the aforementioned disputed claims in their entirety. *See* [Docs. 22–

23]; *see also* [Doc. 24 at pp. 2–3]. Having reached a settlement, the parties submitted their

FLSA Settlement Agreement and Release [Doc. 24-1] for Court approval pursuant to 29

U.S.C. § 216(b). For the following reasons, the Court **DENIES** their Consent Motion for

Approval of Settlement Agreement [Doc. 24] **without prejudice**.

## DISCUSSION

### A.     Standard of Review

In the Eleventh Circuit, FLSA actions may not be settled privately; instead, the

Department of Labor must supervise the payment of back wages or a court must enter a

stipulated judgment after it has determined that the proposed settlement is "a fair and

reasonable [resolution] of a bona fide dispute over FLSA provisions." *Lynn's Food Stores,*

*Inc. v. United States*, 679 F.2d 1350, 1355 (11th Cir. 1982). Additionally, a court must review

the reasonableness of attorneys' fees to ensure that counsel is adequately compensated

and that no conflict of interest affects the amount the plaintiff-employee recovers under

the agreement. *Silva v. Miller*, 307 F. App'x 349, 351 (11th Cir. 2009) (per curiam).

Despite the parties' acknowledgment of bona fide disputes as to liability for the

asserted wage-related claims, they are still willing to compromise and settle this case. *See,*

*e.g.,* [Doc. 24-1 at ¶ 8 ("Defendants specifically disclaim[ ] and den[y] any liability to

Plaintiff or that it engaged in any wrongful, tortious, or unlawful activity.")]; *see also* [Doc. 24 at p. 8]. However, the Court cannot approve the proposed settlement agreement as submitted because it contains pervasive-release language within a provision entitled "General Release of Claims By The Parties," as well as a mutual provision prohibiting disparagement from either party against the other. [*Id.* at ¶¶ 5, 9].

## B.     The Parties' Pervasive Release Language

First, the Court cannot approve the proposed settlement agreement because it contains what courts refer to as a "pervasive release." The essence of this provision requires Plaintiff to refrain from participating in lawsuits against Defendants. Such releases are typified by broad, sweeping language that exempts a defendant from claims that a plaintiff has not brought or, in some cases, claims of which a plaintiff is not yet aware. These releases often include claims that are "'known and unknown,' or 'past, present, and future,' or 'statutory or common law,' or other claims included among the boiler plate, but encompassing, terms unfailingly folded into the typical general release." *Moreno v. Regions Bank*, 729 F. Supp. 2d 1346, 1352 (M.D. Fla. 2010) (footnote omitted). These kinds of provisions are unacceptable because

> [a]n employee who executes a broad release effectively gambles, exchanging unknown rights for a few hundred or a few thousand dollars to which he is otherwise unconditionally entitled. In effect, the employer requests a pervasive release in order to transfer to the employee the risk of extinguishing an unknown claim. . . . [A] pervasive release is a 'side deal' in which the employer extracts a gratuitous (although usually valueless) release of all claims in exchange for money unconditionally owed to the employee. . . . Although inconsequential in the typical civil case . . . , an

employer is not entitled to use an [*sic*] FLSA claim (a matter arising from the employer's failing to comply with the FLSA) to leverage a release from liability unconnected to the FLSA.

*Id.* at 1351.

Basically, a pervasive release allows the defendant-employer to stack the odds—"to confer[ ] an uncompensated, unevaluated, and unfair benefit on [itself]." *Id.* at 1352. Should the plaintiff-employee discover in the future that a claim accrued prior to the date he entered the settlement agreement, he can seek no relief and must content himself with money (1) that the defendant-employer paid to him months or even years before he became aware of the new claim, (2) that was not related in any way to the newly discovered claim, and (3) that he would have been entitled to in the absence of a pervasive release. *See id.* at 1352 ("The employer who obtains a pervasive release receives either nothing (if no claim accrues) or a windfall at the expense of the unlucky employee. In either instance, the employee bears the risk of loss, and the employer always wins—a result that is inequitable and unfair in the circumstance. The employer's attempt to 'play with house money' fails judicial scrutiny.").

A portion of the proposed settlement agreement in this case states verbatim,

**5.** __General Release of Claims By The Parties.__ Plaintiff, on behalf of himself, his heirs, executors, administrators, and assigns, knowingly and voluntarily waives and releases the Defendants and its parent corporation, their affiliates, subsidiaries, divisions, insurers, predecessors, both individually and in their business capacities, and their employee benefits plans and programs and their administrations and fiduciaries (collectively, the 'Released Parties'), from any and all claims, known and unknown, that Plaintiff has or may have against the Released Parties as of the date of

4

execution of the Agreement. This release is comprehensive and includes any claim that Plaintiff could assert against the Released Parties based upon acts or omissions that occurred, or that could be alleged to have occurred, before Plaintiff executes this Agreement. . . .

If any claim is not subject to release, to the extent permitted by law, Plaintiff waives any right or ability to be a class or collective action representative or to otherwise participate in any putative or certified class, collective or multi-party action or proceeding based on such a claim in which the Defendants or any other of the Released Parties is a party.

[Doc. 24-1 at ¶ 5]. Also, within this provision, the parties include a litany of claims—including but not limited to, state-law tort and contract claims as well as federal claims arising under Title VII of the Civil Rights Act of 1964 and others—for which Plaintiff would be prohibited from bringing suit. *See* [*id.*]. For each type of claim listed, the parties intend for Plaintiff to be barred from asserting a particular lawsuit against Defendants in the future that would be unrelated to FLSA causes of action. This, the parties may not do. FSLA settlements permit the release of any and all FLSA violations—and only FLSA violations—preceding the date of execution of a proper settlement agreement. *See, e.g.*, Order Denying Without Prejudice Joint Motion for Settlement Approval, *Bailey v. Strippers, Inc.*, No. 5:18-cv-00128-TES (M.D. Ga. Mar. 18, 2019), ECF No. 34.

The language included in this provision is pervasive in its requirement that Plaintiff relinquish any claims that he currently has but of which he is not aware, and that he must relinquish claims that are unrelated to the instant FLSA action. *See Moreno, supra* ("[A]n employer is not entitled to use an [*sic*] FLSA claim . . . to leverage a release from liability unconnected to the FLSA."); *cf. Nichols v. Dollar Tree Stores, Inc.*, No. 1:13-CV-88

(WLS), 2013 WL 5933991, at *2–3 (M.D. Ga. Nov. 1, 2013) (refusing to approve a settlement agreement containing pervasive releases of claims to include "any other claims or demands [Plaintiff] may have on any basis" arising under statutes other than the FLSA). As such, the Court cannot approve the proposed settlement agreement with such pervasive-release language included. The remaining provisions of the proposed settlement agreement, except as discussed below, can remain as submitted.

## C.    Non-Disparagement Clause

Second, the Court cannot approve the proposed settlement agreement because it contains a non-disparagement clause whereby the parties mutually agree that they "will not make any disparaging statements or representations, either directly or indirectly, whether orally or in writing, by word or gesture, to any person whatsoever, about the other Party or any of the other Party's directors, officers, employees, agents, or representatives."  [Doc. 24-1 at ¶ 9].

Courts have routinely found such clauses to infringe on a plaintiff-employee's free speech rights. *See* Order Denying Joint Motion for Settlement Approval, *Fields v. Southcare Med. & Homecare Servs. LLC*, No. 5:18-cv-00298-TES (M.D. Ga. Jan 6, 2019), ECF No. 10; *see also Nichols*, 2013 WL 5933991, at *3 (disapproving a FLSA settlement agreement containing such a clause as being "particularly problematic in that it does not limit the restraints on Plaintiff's free speech to only those statements concerning his FLSA claim.")); *Valdez v. T.A.S.O. Props., Inc.*, No. 8:09-cv-2250-T-23TGW, 2010 WL 1730700, at

*1 n.1 (M.D. Fla. Apr. 28, 2010); *Yanosik v. Amazulu Transp. Inc.*, No. 2:17-cv-385-FtM-29MRM, 2017 WL 5125884, at *2 (M.D. Fla. Oct. 3, 2017) *recommendation adopted by* 2017 WL 5069051 (M.D. Fla. Nov. 3, 2017); *Loven v. Occoquan Grp. Baldwin Park Corp.*, No. 6:14-cv-328-Orl-41TBS, 2014 WL 4639448, at *3 (M.D. Fla. Sept. 16, 2014). District courts have consistently held non-disparagement provisions impermissible, and the Court cannot approve a proposed settlement agreement containing such a clause.

## CONCLUSION

For the reasons discussed herein, Court **REJECTS** the proposed settlement agreement and **DENIES** the parties' Consent Motion for Approval of Settlement Agreement [Doc. 24] **without prejudice**. Accordingly, the parties are **ORDERED** to submit a revised proposed settlement agreement, in full, within 14 days of the date of this Order or inform the Court of their intention to proceed with the case. Upon receipt, the Court will review the parties' revised settlement agreement to ensure that it comports with the mandates discussed above.

**SO ORDERED**, this 4th day of June, 2019.

S/ Tilman E. Self, III
**TILMAN E. SELF, III, JUDGE**
**UNITED STATES DISTRICT COURT**